## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOSEPH POST, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| LEGG MASON, INC., ROBERT E. ANGELICA, CAROL ANTHONY DAVIDSON, EDWARD P. GARDEN, MICHELLE J. GOLDBERG, STEPHEN C. HOOLEY, JOHN V. MURPHY, NELSON PELTZ, ALISON A. QUIRK, JOSEPH A. SULLIVAN, FRANKLIN RESOURCES, INC., and ALPHA SUB, INC., | ) ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on February 18, 2020 (the "Proposed Transaction"), pursuant to which Legg Mason, Inc. ("Legg Mason" or the "Company") will be acquired by Franklin Resources, Inc. ("Parent"), a Delaware corporation, and Alpha Sub, Inc. ("Merger Sub," and together with Parent, "Franklin").

2.      On February 17, 2020, Legg Mason's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Franklin.  Pursuant to the terms of the Merger Agreement, Legg Mason's stockholders will receive $50.00 in cash for each share of Legg Mason common stock

they own.

3.      On March 27, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Legg Mason common stock.

9.      Defendant Legg Mason is a Maryland corporation and a party to the Merger Agreement.  Legg Mason's common stock is traded on the New York Stock Exchange under the

ticker symbol "LM."

10.     Defendant Robert E. Angelica is a director of the Company.

11.     Defendant Carol Anthony Davidson is a director of the Company.

12.     Defendant Edward P. Garden is a director of the Company.

13.     Defendant Michelle J. Goldberg is a director of the Company.

14.     Defendant Stephen C. Hooley is a director of the Company.

15.     Defendant John V. Murphy is a director of the Company.

16.     Defendant Nelson Peltz is a director of the Company.

17.     Defendant Alison A. Quirk is a director of the Company.

18.     Defendant Joseph A. Sullivan is Chief Executive Officer and Chairman of the Board of the Company.

19.     The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

21.     Defendant Merger Sub is a Maryland corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Legg Mason (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.     This action is properly maintainable as a class action.

24.     The Class is so numerous that joinder of all members is impracticable.  As of February 13, 2020, there were approximately 86,922,791 shares of Legg Mason common stock

outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

29.     Legg Mason helps investors globally achieve better financial outcomes by expanding choice across investment strategies, vehicles, and investor access through independent investment managers with diverse expertise in equity, fixed income, alternative, and liquidity

investments.

30.     The Company's investment affiliates operate with investment independence and have specialized expertise across asset classes and markets around the globe.

31.     The Company's affiliates include: Brandywine Global, Clarion Partners, ClearBridge Investments, Martin Currie, QS Investors, Royce Investment Partners, and Western Asset.

32.     On February 17, 2020, Legg Mason's Board caused the Company to enter into the Merger Agreement with Franklin.

33.     Pursuant to the terms of the Merger Agreement, Legg Mason's stockholders will receive $50.00 in cash for each share of Legg Mason common stock they own.

34.     According to the press release announcing the Proposed Transaction:

Franklin Resources, Inc. (the "Company") [NYSE:BEN], a global investment management organization operating as Franklin Templeton, today announced that it has entered into a definitive agreement to acquire Legg Mason, Inc. [NYSE:LM] for $50.00 per share of common stock in an all-cash transaction. The Company will also assume approximately $2 billion of Legg Mason's outstanding debt. The acquisition of Legg Mason and its multiple investment affiliates, which collectively manage over $806 billion in assets as of January 31, 2020, will establish Franklin Templeton as one of the world's largest independent, specialized global investment managers with a combined $1.5 trillion in assets under management (AUM) across one of the broadest ranges of high-quality investment teams in the industry. The combined footprint of the organization will significantly deepen Franklin Templeton's presence in key geographies and create an expansive investment platform that is well balanced between institutional and retail client AUM. In addition, the combined platform creates a strong separately managed account business. . . .

Organizational Structure and Parent Company Integration

With this acquisition, Franklin Templeton will preserve the autonomy of Legg Mason's affiliates, ensuring that their investment philosophies, processes and brands remain unchanged. As with any acquisition, the pending integration of Legg Mason's parent company into Franklin Templeton's, including the global distribution operations at the parent company level, will take time and only commence after careful and deliberate consideration.

Following the closing of the transaction, Jenny Johnson will continue to serve as president and CEO, and Greg Johnson will continue to serve as executive chairman of the Board of Franklin Resources, Inc. There will be no changes to the senior management teams of Legg Mason's investment affiliates. Global headquarters will remain in San Mateo, CA and the combined firm will operate as Franklin Templeton. . . .

Transaction Details

The all-cash consideration of $4.5 billion will be funded from the Company's existing balance sheet cash. Franklin Templeton will also assume approximately $2 billion in Legg Mason's outstanding debt. Upon closing of the transaction, Franklin Templeton expects to maintain a robust balance sheet and considerable financial flexibility with pro forma gross debt of approximately $2.7 billion with remaining cash and investments of approximately $5.3 billion. This transaction is designed to preserve the Company's financial strength and stability with modest leverage, significant liquidity and strong cash flow to provide ongoing flexibility to invest in further growth and innovation.

This transaction is expected to generate upper twenties percentage GAAP EPS accretion in Fiscal 2021 (based on street consensus earnings estimates for each company), excluding one-time charges, non-recurring and acquisition related expenses.

While cost synergies have not been a strategic driver of the transaction, there are opportunities to realize efficiencies through parent company rationalization and global distribution optimization. These are expected to result in approximately $200 million in annual cost savings, net of significant growth investments Franklin Templeton expects to make in the combined business and in addition to Legg Mason's previously announced cost savings. The majority of these savings are expected to be realized within a year, following the close of the transaction, with the remaining synergies being realized over the next one to two years.

The transaction has been unanimously approved by the boards of Franklin Resources, Inc. and Legg Mason, Inc. This transaction is subject to customary closing conditions, including receipt of applicable regulatory approvals and approval by Legg Mason's shareholders, and is expected to close no later than the third calendar quarter of 2020.

Broadhaven Capital Partners, LLC and Morgan Stanley & Co LLC served as financial advisors to Franklin Resources, Inc. Ardea Partners LP also provided advice. Willkie Farr & Gallagher LLP acted as external legal counsel. PJT Partners served as the lead financial advisor to Legg Mason. J.P. Morgan Securities LLC also served as financial advisor to Legg Mason. Weil, Gotshal & Manges LLP served as lead counsel to Legg Mason and Skadden, Arps, Slate, Meagher & Flom LLP served as special counsel to Legg Mason. Dechert LLP served as legal counsel

to EnTrust Global.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

35.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

36.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

37.     First, the Proxy Statement omits material information regarding the Company's financial projections.

38.     The Proxy Statement fails to disclose: (i) all line items used to calculate (a) adjusted EBITDA and (b) unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

39.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

40.     Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, PJT Partners LP ("PJT") and J.P. Morgan Securities LLC ("JPM").

41.     With respect to PJT's Selected Precedent Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by PJT in the analysis.

42.     With respect to PJT's Selected Comparable Company Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by PJT

in the analysis.

43.     With respect to PJT's Discounted Cash Value Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the terminal values of the Company; (iii) PJT's basis for applying an exit multiple range of 6.5x to 8.5x; (iv) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0% and the perpetuity growth rate range of 0.2% to 0.8%; (v) the Company's cash, debt, and equity investments; and (vi) the fully diluted number of Company shares.

44.     With respect to PJT's additional discounted cash flow analyses, the Proxy Statement fails to disclose: (i) the consensus equity research analyst forecasts used by PJT; (ii) the adjusted free cash flows; (iii) PJT's basis for using an exit multiple range of 6.5x to 8.5x; and (iv) the individual inputs and assumptions underlying the discount rate range of 9.0% to 11.0% and the perpetuity growth rates of 0.4% to 0.9% and 0%.

45.     With respect to PJT's analysis of price targets, the Proxy Statement fails to disclose: (i) the price targets observed by PJT in the analysis; and (ii) the sources thereof.

46.     With respect to JPM's Public Trading Multiples analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by JPM in the analysis.

47.     With respect to JPM's Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by JPM in the analysis.

48.     With respect to JPM's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the terminal values of the Company; (iii) the individual inputs and assumptions underlying the range of discount rates from 9.0% to 11.0% and the perpetuity growth rates ranging from 0.5% to 1.0%; and (iv) the calculated estimated net operating loss carry-forwards and other tax benefits.

49.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

50.     Third, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's financial advisors.

51.     The Proxy Statement fails to disclose the timing and nature of the past services PJT provided to the parties to the Merger Agreement and their affiliates, and the amount of compensation PJT received for providing such services.

52.     The Proxy Statement also fails to disclose the timing and nature of the past services JPM provided to the parties to the Merger Agreement and their affiliates.

53.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

54.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Special Committee; (iii) Recommendation of the Board; (iv) Certain Financial Projections Utilized in Connection with the Merger; (v) Opinion of PJT Partners LP; and (vi) Opinion of J.P. Morgan Securities LLC.

55.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Legg Mason**

56.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Legg Mason is liable as the issuer of these statements.

58.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

59.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

60.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

61.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

62.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and Franklin**

64.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65.     The Individual Defendants and Franklin acted as controlling persons of Legg Mason within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Legg Mason and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

66.     Each of the Individual Defendants and Franklin was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

68.     By virtue of the foregoing, the Individual Defendants and Franklin violated Section 20(a) of the 1934 Act.

69.    As set forth above, the Individual Defendants and Franklin had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 1, 2020

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*  _____
Brian D. Long (#4347)
Gina M. Serra (#5387)

**OF COUNSEL:**                    300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
**RM LAW, P.C.**                   Telephone: (302) 295-5310
Richard A. Maniskas               Facsimile: (302) 654-7530
1055 Westlakes Drive, Suite 300   Email: bdl@rl-legal.com
Berwyn, PA 19312                  Email: gms@rl-legal.com
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com            *Attorneys for Plaintiff*